HIGGINS, Commissioner.
Appeal from denial, after evidentiary hearing, of motion under Rule 27.26, V.A. M.R., to vacate and set aside judgment of conviction and sentence to life imprisonment for murder, first degree. (Appeal taken February 26, 1972; jurisdiction retained pursuant to orders August 3, 1972, and April 9, 1973.)
As grounds for relief, movant asserted:
(a) movant’s constitutional rights were violated at the time of his arrest and while in police custody in prison because incriminating statements were then extracted from him and used against him at trial; (b) movant was denied due process and equal protection of the law because, although charged with a capital offense, he had no counsel at arraignment and waived preliminary hearing without the aid of *21 counsel; (c) movant was denied due process and equal protection of the law by ineffectiveness of his court-appointed lawyers.
By supplement to his motion, movant also asserted: (I) that he was denied effective assistance of counsel because he was not advised by counsel of his right to appeal his conviction; (II) that he did not knowingly and intelligently waive his right to appeal because he did not know he had such right; (III) that even if he knew of his right to appeal, he did not knowingly and intelligently waive that right because neither court nor counsel advised him of his right to appeal as a poor person, of the time limit in which to appeal, and of his right to appointed appellate counsel; (IV) that he was denied equal protection of the law because he was indigent when sentenced, ignorant of his right to appeal as a poor person, and he was not advised of that right.
On February 22, 1968, Alphonzo Lewis, Jr., a/k/a Alphonze Lewis, Jr., an inmate of the Missouri State Penitentiary, was charged by complaint in the Magistrate Court of Cole County, Missouri, with the murder on February 21, 1968, of a fellow inmate, Robert Ybarra. On March 4, 1968, defendant was “formally arraigned. After being advised as to his rights, he waived his preliminary hearing. The court bound the defendant over for trial in the Circuit Court of Cole County, Missouri, returnable March 18, 1968. Defendant returned to the Missouri penitentiary.”
On March 18, 1968, defendant appeared in the circuit court and was advised he was charged with the murder of Robert Ybar-ra, and Messrs. Nicholas Monaco and Sam C. Blair were appointed to represent him. On May 20, 1968, defendant appeared in the circuit court with Mr. Monaco and was arraigned on a charge of prior conviction and the murder, first degree, of Robert Ybarra, to which defendant pleaded not guilty.
On December 10, 1968, defendant appeared in the circuit court with his attorneys, Messrs. Monaco and Robert North-cutt, Mr. Blair having been relieved. Defendant was accorded trial to a jury which convicted him as charged. On January 10, 1969, defendant appeared in circuit court with his attorneys, Messrs. Monaco and Northcutt, at which time defendant’s motion for new trial timely filed January 6, 1969, was argued, considered, and overruled. Defendant was then accorded allo-cution and, giving no reason or cause why sentence should not be pronounced, was sentenced to life imprisonment in accordance with the jury verdict. Defendant did not appeal his conviction.
According to Alphonzo Lewis, Jr., the murder for which he was convicted occurred in the tag plant in the penitentiary. He saw Guard Captain Deardeuff and Guard Captain Steele at the time and neither advised him of his right to remain silent, that anything he said might be used against him, that he had a right to an attorney and to have an attorney appointed if he had no money. He had a conversation with Sergeant Fluegel of the State Highway Patrol in the I.D. room in the penitentiary the day following the murder, at which time he was being held in “seclusion” on Death Row. On the day before, he and Captain Deardeuff were coming up the hill from the tag plant to the basement and in course met Deputy Warden Elliott, Guard Lieutenant Turner and Guard Captain Wyrick. Mr. Elliott said, “You black son-of-a-bitch, what did you kill a white man for?” On the way to see Sergeant Fluegel, Captain Wyrick “told me to get it cleaned up and get out of the basement and get it all over with,” and that he would get his diamonds back. He acknowledged that Sergeant Fluegel advised him of his rights and that he signed a paper stating he had been given his rights. He complained, however, that his statement was not voluntary because he “didn’t want to be in the basement. * * * He *22 [Wyrick] said I would only prolong my time [in the basement] by not talking to this man.” Captain Wyrick was present when he talked to Sergeant Fluegel but he did not say anything. He did not ask for an attorney. He then gave the confession to Sergeant Fluegel which was received in evidence at the trial. He recalled that his attorneys filed and argued a motion to suppress this confession. He complained that counsel were ineffective because they failed to raise a plea of not guilty by reason of temporary mental defect in that he was drunk at the time of his arrest and when he spoke to Captains Deardeuff and Steele. He also csmplained of his counsel for failing to suppress his statement to Captains Deardeuff and Steele at the time of his arrest and failing to investigate the question put by Mr. Elliott and the promise made by Captain Wyrick; and that they did not get a confession to the murder from James Edward McGee when called as a defense witness. Witness McGee was advised by his lawyer not to answer any question tending to incriminate himself and the court honored his refusal. He acknowledged that Messrs. Monaco and Northcutt prepared and argued a motion for new trial and that they spoke about an appeal and advised that he could appeal. He asserted, however, that neither they nor the court told him he could have an attorney appointed for that purpose.
On cross-examination movant admitted that the statement given to Captains Dear-deuff and Steele at the time of the murder, “I killed me one gangster son-of-a-bitch and I am going to get me another one [Rebel Swain],” was not the product of interrogation by either officer. He acknowledged that he was taken to the office of the prosecuting attorney shortly after the murder but said he did not remember being advised by the prosecuting attorney of his rights. A tape of the incident showed that Mr. Kinder, the prosecuting attorney, interviewed the defendant, at which time he stated he had not received any abuse, threats, or promises from anyone and that he had been advised of his rights. Defendant then proceeded to tell Mr. Kinder about the incident and admitted he killed Robert Ybarra with a knife because Ybar-ra previously had taken some diamonds from him. Movant remembered this statement and reasserted that Mr. Elliott directed to him the accusative question previously quoted.
Nicholas M. Monaco represented defendant along with Mr. Northcutt. He put Mr. McGee on the witness stand as requested but could not obtain his alleged confession because of the advice given McGee by counsel to exercise his right not to incriminate himself. He recalled his client’s assertion that he was intoxicated at the time the crime was committed. He and Mr. Northcutt filed and argued a motion to suppress defendant’s confession and he thought they had objected to the statements related by Captains Deardeuff and Steele. He advised defendant that he had a right to appeal and that “we would take the appeal if we were appointed to do so. * * * he indicated he did not want to appeal.” He did not recall whether the court advised defendant of his right to appeal. Mr. Monaco consulted with defendant prior to trial, explored his defenses, raised objections, and utilized information furnished by defendant. The client made no complaint of counsel in regard to trial tactics and the manner of handling the case.
Robert R. Northcutt consulted with defendant “many times.” He assisted with the motion to suppress defendant’s confession and felt the proper objections were made to the statements related by Captains Deardeuff and Steele. He did not recall any mention by defendant of a defense based on mental disease or defect; he did recall something about drinking potato water distilled in the tag shop. He and Mr. Monaco advised defendant of his right to appeal and he indicated to both that he did not wish to appeal.
*23 The statement related by Captains Dear-deuff and Steele was made to them by defendant when they arrived at the murder scene and saw defendant with a knife in his hand standing over Ybarra.
Sergeant Fluegel testified at defendant’s trial and recited the substance of defendant’s confession, only after counsel’s unsuccessful motion to suppress the confession, alleging it to be involuntary.
In denial of relief to movant the court made detailed findings of fact, all supported by the foregoing statement, and concluded :
“In the trial of the case, his court-appointed attorneys took all of the appropriate steps and actions in attempting to exclude the incriminating statements by the Defendant. The procedure followed by the trial court was the proper procedure prescribed by our Supreme Court and the findings of the trial court comply with the last decision, of the Supreme Court of the United States. (See Lego v. Twomey, [404 U.S. 477] 92 S.Ct. 619 [30 L.Ed.2d 618].)
“It is true that the Movant waived his preliminary hearing in the Magistrate Court without the benefit of counsel. There was no attempt made to show any error or prejudice on this ground. This point is ruled against the Movant. (See State v. Caffey, [Mo.] 457 S.W.2d 657.)
“Movant’s testimony at the hearing regarding the ineffectiveness of his court-appointed counsel, was clearly contradicted by the two attorneys who represented him at the trial. The records of the trial show that he was adequately represented by two attorneys of 'long experience. This point must be ruled against the Movant.”
Appellant contends the court erred (I) in overruling his motion because incriminating statements were extracted from him at a time when he was suspected of- committing a crime and in custody of prison officials without being afforded legal counsel or being advised of his rights against self-incrimination.
This contention goes to the statement made to and related at trial by Captains Deardeuff and Steele when they saw AI-phonzo Lewis, Jr., with a knife in his hand standing over the body of his victim, Robert Ybarra. Appellant, citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), argues that since neither officer advised him of his rights to remain silent and to an attorney, he was deprived of “fundamental fairness and evenhanded justice.”
The difficulty with this argument is that there was evidence to support the trial court’s finding that the statement was voluntarily made without any interrogation by the officers. Movant admitted that his statement to the officers was not the product of interrogation on their part; and “Volunteered statements of any kind are not barred * * *. [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.” Miranda v. Arizona, supra, 384 U.S. l.c. 478, 86 S.Ct. l.c. 1630.
Appellant contends the court erred (II) because his confession was not voluntary; it was the product of improper influence, coercion and promises of worldly advantage by prison officials.
This contention goes to the confession given to and related at trial by Sergeant Fluegel. Appellant points to his custody in “seclusion” following the murder and his assertion that Captain Wyrick told him to confess in order to get out of seclusion and to get his diamonds returned to argue that his confession was thus induced, that it was thus involuntary, and that its admission deprived him of due process of law.
*24 The difficulty with this contention is that the erroneous admission of defendant’s confession, if so, was, at most, a trial error which could be considered only on direct appeal and not under Rule 27.26, V. A.M.R. State v. Thompson, 324 S.W.2d 133, 135-136 (Mo. banc 1959); State v. Wiggins, 360 S.W.2d 716, 718 (Mo. 1962); State v. Hooper, 399 S.W.2d 115 (Mo.1966); Webb v. State, 447 S.W.2d 513 (Mo.1969); Young v. State, 473 S.W.2d 390 (Mo.1971).
Appellant contends the court erred (III) because he did not have counsel when he waived his preliminary hearing.
Appellant concedes a lack of authority to support this contention; and this court has uniformly held that counsel need not have been appointed for indigent defendants at preliminary hearings held prior to June 22, 1970. State v. Caffey, 457 S.W.2d 657 (Mo.1970); Sallee v. State, 460 S.W.2d 554, 559 (Mo.1970).
Finally, appellant contends the court erred (IV) because he had ineffective assistance of counsel at trial; they failed to object to use of his extrajudicial admissions and failed to properly advise him of his right to appeal his conviction.
Appellant asserts that counsel failed to object to the admissions recited by Captains Deardeuff and Steele, and points to the alleged failure of counsel and the court to advise that he could have court-appointed counsel on appeal.
The trial court’s conclusion on this score is supported by the testimony of Messrs. Monaco and Northcutt that defendant had been informed of his right to appeal; that they discussed an appeal and the right to appeal with defendant; that they would take the appeal for defendant if appointed to do so; that defendant advised them he did not wish to appeal; that both felt they had made all the appropriate objections or motions, and, by movant’s admission, that the statement made to Captains Deardeuff and Steele was not a product of interrogation. Necessarily, the trial court resolved the discrepancies between this version and that of movant. See State v. Maness, 408 S.W.2d 15 (Mo.1966); Garton v. State, 454 S.W.2d 522 (Mo.1970); Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); Kress v. United States, 411 F.2d 16 (8th Cir. 1969); State v. Caffey, supra.
Accordingly, it may not be said on this record that the findings, conclusions and judgment of the trial court are “clearly erroneous.” Rule 27.26(j), V.A.M.R.
Judgment affirmed.
WELBORN, C., concurs.
PER CURIAM:
The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.
BARDGETT, P. J., HOLMAN, J., and DONNELLY, C. J., concur.
SEILER, J., not sitting.